UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICHIE A. STOKES, JR.,

Plaintiff,

v.

THE COUNTY OF WAYNE, et al.,

Defendants.

**DECISION AND ORDER**

6:25-CV-06540 EAW

## INTRODUCTION

*Pro se* plaintiff Richie A. Stokes, Jr. ("Plaintiff") brings this civil rights action against the County of Wayne ("Wayne County"), Wayne County Jail, Wayne County Administrator Rick House ("Administrator House"), Wayne County Attorney Daniel Connors ("Connors"), Wayne County Sheriff Robert Milby ("Sheriff Milby"), Wayne County Undersheriff Tammy Ryndock ("Undersheriff Ryndock"), Wayne County Lieutenant James Miller, Deputy Matthew Lewellyn ("Deputy Lewellyn"), Corrections Officer A. Kerr, Nurse Holly, Supervisor Has Johnville, Wayne County Medical Services/EMS ("Wayne County Medical Services"), Wayne County Medical Director Doctor James Syrett ("Dr. Syrett"), Ed Major, Emergency Medical Technician John Wiltsie, Wayne County Compliance Officer Ed Hunt, EMS Crew Member Alicia Catalano ("EMT Catalano"), EMS Primary Patient Caregiver Cody Hannigan ("EMT Hannigan"), Wayne County Public Health Director Diane Devlin, and John/Jane Doe #1-20 ("Doe

Defendants") (collectively "Defendants"), alleging Defendants violated his constitutional rights and state laws.[1] (Dkt. 1).

Pending before the Court is Plaintiff's motion for service (Dkt. 11) and Defendants' motion to dismiss the complaint for failure to state a claim, failure to serve a notice of claim, failure to timely serve the complaint, and for insufficient service of process. (Dkt. 12). For the following reasons, Defendants' motion to dismiss (Dkt. 12) is granted in part and denied in part and Plaintiff's motion for service (Dkt. 11) is denied without prejudice.

**BACKGROUND**

The following facts are taken from Plaintiff's complaint. (Dkt. 1). As required at this stage of the proceeding, the Court treats Plaintiff's well-pleaded allegations as true.[2]

Deputy Lewellyn and the unknown Doe Defendants arrested Plaintiff on November 4, 2024.[3] (Dkt. 1 at ¶ 29). Plaintiff was arraigned the same day and charged with

---

[1] Defendants' counsel entered an appearance on behalf of all Defendants except Nurse Holly and Ed Major. Defendants' memorandum of law notes that Nurse Holly and Ed Major are not Wayne County employees and the motion to dismiss therefore does not pertain to them. (Dkt. 12-1 at 9).

[2] The vast majority of Plaintiff's allegations are legal conclusions presented as factual assertions. (*See, e.g.*, Dkt. 1 at ¶ 36 ("As part of the false arrest, detention, and accusations, Defendants . . . caused Plaintiff to be deprived of his liberty, and denial of medical care without probable cause.")). While all well-pleaded allegations must be accepted as true on a Rule 12(b)(6) motion, a court "giv[es] no effect to legal conclusions couched as factual allegations." *Starr v. Sony BMG Music Ent.*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007)).

[3] Plaintiff's complaint states that he was arrested on November 4, 2025 (Dkt. 1 at ¶ 29), which Defendants point out would be impossible because the complaint was filed on October 6, 2025 (Dkt. 12-1 at 10). Defendants assume Plaintiff meant to allege he was arrested in 2024, not 2025, and the Court assumes the same. *See Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (a *pro se* complaint "must be construed liberally with 'special

"numerous criminal charges," including criminal obstruction of breathing or blood circulation and second-degree harassment. (*Id.* at ¶¶ 38, 79). Plaintiff was held in a cold jail cell for eight hours after his arrest. (*Id.* at ¶¶ 69-70). While he was detained at the jail, Deputy Lewellyn called Plaintiff a "douche." (*Id.* at ¶¶ 26, 76). Plaintiff also had three "[h]uman bites," which were open wounds that went untreated. (*Id.* at ¶¶ 68-69).[4] After he was released, Plaintiff went to the Newark Community Hospital to have the bites treated, where he "received a shot and was placed on an antibiotic for a week." (*Id.* at ¶ 70). After Plaintiff's arrest, he was "required to make multiple appearances in court" but the victim later "recanted her statement on January 7th, 2025," and the accusatory instrument was ultimately dismissed on July 14, 2025. (*Id.* at ¶¶ 29, 32, 66).

Plaintiff initiated this action on October 6, 2025. (Dkt. 1). On October 17, 2025, the Wayne County Attorney's office accepted service of the summons and complaint on behalf of all current Wayne County employees named as defendants, and counsel for Defendants sought an extension of time for Plaintiff to serve the former Wayne County employees named as defendants (Administrator House, EMT Hannigan, and Connors), explaining that counsel would represent the former Wayne County employees after service was completed. (Dkt. 4). The Court granted the request, giving Plaintiff a 60-day extension of time to serve the former Wayne County employees. (Dkt. 6). Plaintiff instead

---

solicitude' and interpreted to raise the strongest claims that it suggests" (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011))). Indeed, Plaintiff alleges elsewhere in his complaint that he was arrested in 2024. (*See* Dkt. 1 at ¶ 68).

[4] It is unclear in the complaint whether Plaintiff suffered these bites before his arrest, during his arrest, or after his arrest.

requested the U.S. Marshals Service serve the remaining unserved defendants (Dkt. 7), which the Court denied because Plaintiff did not explain why he did not perform service (Dkt. 8). Plaintiff then renewed his request to have the U.S. Marshals Service effect service on the unserved defendants, or in the alternative, requested that Defendants' counsel accept service on behalf of the unserved defendants. (Dkt. 11). On his renewed request, Plaintiff explains that he does not know the unserved defendants' addresses and has no means to personally locate the unserved defendants. (*Id.*). Shortly after Plaintiff filed his renewed motion for service, Defendants moved to dismiss (Dkt. 12). Plaintiff filed his opposition to the motion to dismiss (Dkt. 17) and Defendants submitted a reply (Dkt. 20).

## DISCUSSION

### I. Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). This consideration also includes "documents upon which the complaint relies and which are integral to the complaint." *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). A court should evaluate the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In addition, "[i]t is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

## II. Analysis

Plaintiff's complaint asserts a host of constitutional and state-law claims. For the reasons explained below, the Court dismisses all claims and defendants except the Fourth Amendment false arrest and malicious prosecution claims and state-law assault and battery claim brought against Deputy Lewellyn and the unknown Doe Defendants.

### A. Personal Involvement

Defendants argue the constitutional claims must be dismissed against all individual defendants because Plaintiff failed to allege the personal involvement of any individual defendant in any of the alleged constitutional violations. (Dkt. at 12-1 at 16-17). The Court agrees except as to Deputy Lewellyn and the unknown Doe Defendants.

"[I]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). To establish a defendant's personal involvement "a plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Supervisory liability is generally unavailable on a § 1983 claim, *id.*, but may be shown on a deliberate indifference claim "based on a showing that the supervisor . . . 'failed to remedy a wrong after learning of' that wrong[.]" *Suarez v. Morton*, 170 F.4th 33, 61 (2d Cir. 2026) (quoting *M.B v. Reyes*, No. 97-2653, 1999 WL 147031, at *2 (2d Cir. Mar. 15, 1999)).

The vast majority of Plaintiff's allegations are conclusory statements asserting that multiple defendants violated his constitutional rights. (*See, e.g.*, Dkt. 1 at ¶ 35 ("Defendants WAYNE, SHERIFF'S OFFICE, LEWELLYN, Milby, Ryndock, Miller, Kerr, Holly, Catalano, Hannigan and Jane and John Doe[]#1-20, each took an active role in creating and manufacturing the allegations against Plaintiff, solely for the purpose of depriving Plaintiff of his freedom, Medical attention and not to effectuate justice.")). With the exception of Deputy Lewellyn and the unknown Doe Defendants, which the Court discusses in further detail below, Plaintiff does not provide any necessary context about what role any individual defendant played in the alleged constitutional deprivations.[5] As Defendants point out, Defendant Connors is not even mentioned in the body of the complaint. (Dkt. 12-1 at 17). Plaintiff adds a few additional details in his memorandum in opposition to the motion. For example, Plaintiff states in his response that "Defendant Holly, the facility nurse, failed to provide necessary medical care after Plaintiff sustained multiple human bite wounds and explicitly requested treatment." (Dkt. 17 at ¶ 49). But

[5] Generously construed, the complaint also identifies Dr. Syrett as a policymaker in connection with Plaintiff's *Monell* claim. (Dkt. 1 at ¶ 52).

factual assertions presented in a memorandum of law may not be considered on a motion to dismiss. *See Stewart v. Metro. Life Ins. Co.*, No. 21 CIV. 8092 (PGG), 2025 WL 2710112, at *7 (S.D.N.Y. Sept. 22, 2025) ("This Court cannot rely on factual allegations set forth in a brief in resolving a motion to dismiss.").

Plaintiff's alleged theory of vicarious liability and group pleading are also impermissible. To the extent Plaintiff alleges that unspecified defendants are "vicariously liable . . . under the doctrine of respondeat superior," (Dkt. 1 at ¶ 25), that theory of liability is "inapplicable to . . . § 1983 suits," *Iqbal*, 556 U.S. at 676. Plaintiff also repeatedly groups several individual defendants together and alleges the group was collectively responsible for violating his rights. (*See, e.g.*, Dkt. 1 at ¶ 24 ("[T]he Respondent deputy(ies), Lieutenant(s), Sheriff(s), officer(s), corrections officer(s), Sergeant(s), guard(s),[]nurse(s), physician's assistant(s), nurse practitioner(s), and/or physician(s), including but not limited to, Defendants MILBY, RYNDOCK, MILLER, KERR, HOLLY,[]CATALANO, HANNIGAN, and John and Jane Doe #1-20, [are] responsible for allowing the assault, battery, lack of supervision, lack of protocol, lack of following protocol, described carelessness and negligence, and lack of appropriate medical care on the Plaintiff, were employed by the Defendants and were acting in their official capacity.")). Plaintiff may not simply lump individual defendants together to state a claim against each defendant. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Surgalign Spine Techs., Inc.*, No. 22-CV-09870 (JLR), 2024 WL 477031, at *4 (S.D.N.Y. Feb. 7, 2024) ("It is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants together for pleading

purposes." (quoting *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 728 (S.D.N.Y. 2021))).

The only permissible allegations that identify individual Defendants and include allegations of their personal involvement in the alleged constitutional violations are related to Plaintiff's false arrest, malicious prosecution, and Thirteenth Amendment claims. Plaintiff alleges that Deputy Lewellyn and unknown Doe Defendants arrested him on November 4, 2024, despite being aware he had not committed a crime, and prosecuted him despite a lack of probable cause. (Dkt. 1 at ¶¶ 29-32). Plaintiff also alleges that "[Deputy] Lewellyn . . . called the plaintiff a [d]ouche" purportedly in violation of the Thirteenth Amendment. (*Id.* at ¶ 76). The Court concludes those allegations are sufficient to demonstrate Deputy Lewellyn and the unknown Doe Defendants' personal involvement in the alleged false arrest, malicious prosecution, and Thirteenth Amendment claims. The Court will address those claims in further detail below, but the constitutional claims against all other defendants are dismissed for lack of personal involvement.

**B. Administrative Offices**

Defendants also argue that the Wayne County Jail and Wayne County Medical Services cannot be sued as administrative arms of Wayne County.[6] (Dkt. 12-1 at 15-16).

---

[6] Defendants also argue that the Wayne County Sheriff's Office may not be sued as an administrative arm of Wayne County. (Dkt. 12-1 at 15). While Sheriff Milby and Undersheriff Ryndock are named as defendants, the Wayne County Sheriff's Office is not. But the body of the complaint contains allegations against the "Sheriff's Office." (*See, e.g.*, Dkt. 1 at ¶ 18). To the extent Plaintiff intended to name the Wayne County Sheriff's Office as a defendant, the Court agrees with Defendants that a sheriff's office is an administrative arm of a municipality and therefore not capable of being sued. *See Stokes v. Wayne County*, No. 6:23-CV-06482 EAW, 2024 WL 4262276, at *5 (W.D.N.Y. Sept.

"[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued." *Baez v. Tioga County*, No. 9:23-CV-1512 (LEK/ML), 2024 WL 3371034, at *3 (N.D.N.Y. July 11, 2024) (quoting *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002)). In his opposition, Plaintiff does not dispute Defendants' argument. The Court agrees that the Wayne County Jail and Wayne County Medical Services are administrative arms of Wayne County and therefore cannot be sued. *See Garland v. N.Y.C. Fire Dep't*, 574 F. Supp. 3d 120, 126 (E.D.N.Y. 2021) (observing that the City of New York should have been named instead of the New York Fire Department); *Sturgis v. Suffolk Cnty. Jail*, No. 12-CV-5263, 2013 WL 245052, *2 (E.D.N.Y. Jan. 22, 2013) ("[T]he [Suffolk County] Jail and [Suffolk County Police Department] are administrative arms of the County of Suffolk . . . they lack the capacity to be sued").

### C. Constitutional Claims

Plaintiff alleges that Defendants violated his constitutional rights protected by the Fourth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments. (Dkt. 1 at ¶¶ 28, 76, 84). As discussed above, Plaintiff does not allege any of the individual Defendants were personally involved in any of these alleged constitutional violations, except for Deputy Lewellyn and the unknown Doe Defendants' involvement in Plaintiff's arrest, prosecution, and alleged Thirteenth Amendment violation. Nevertheless, particularly because the Court is granting Plaintiff an opportunity to attempt to cure the deficiencies in his complaint, the

---

23, 2024) (dismissing Wayne County Sheriff's Department because it is an administrative arm of Wayne County).

Court will evaluate the sufficiency of Plaintiff's pleadings related to each constitutional claim.

### 1. False Arrest

Defendants argue that Plaintiff's Fourth Amendment false arrest claim must be dismissed because the allegation that there was a victim statement provided probable cause to arrest Plaintiff. (Dkt. 12-1 at 18-19). The Court disagrees.

"A § 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). Under New York law, a plaintiff asserting a false arrest claim must prove that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012) (citation modified). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Gonzalez*, 728 F.3d at 155 (quoting *Weyant*, 101 F.3d at 852). "While [a probable cause] defense is normally asserted in an answer, it may nevertheless warrant dismissal on a pre-answer motion to dismiss where probable cause 'appears on the face of the complaint[.]'" *McLennon v. City of New York*, 171 F. Supp. 3d 69, 87-88 (E.D.N.Y. 2016) (citations omitted).

Although Plaintiff's complaint does not provide specific details, Plaintiff alleges that Deputy Lewellyn and the unknown Doe Defendants arrested him without probable

cause that he had committed a crime, "thus depriving him of his liberty." (Dkt. 1 at ¶ 29). Plaintiff was held in a "cold jail cell" for eight hours and charged with criminal obstruction of breath or blood circulation and harassment in the second degree. (*Id.* at ¶¶ 29, 38, 69-70). He also alleges that "[t]he victim recanted her statement on January 7th, 2025." (*Id.* at ¶ 66). Contrary to Defendants' contention, the alleged victim statement does not require dismissal of Plaintiff's false arrest claim.[7]

"When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity[.]" *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (internal citation omitted). While Defendants argue that "[v]ictims, in particular, are among the more reliable informants" (Dkt. 12-1 at 19), there are no allegations in the complaint that pertain to the victim's veracity. The allegation that the victim statement was later recanted at least raises inferences concerning the victim's credibility. It is also unclear when the victim statement was created. Construing all reasonable inferences in favor of Plaintiff, there is a factual dispute that cannot be resolved on a Rule 12(b)(6) motion to dismiss regarding whether the

---

[7] Defendants submitted a copy of the witness statement in support of their motion. (*See* Dkt. 12-4). Defendants contend the Court may consider the document because "[P]laintiff discusses the witness statement in the complaint[.]" (Dkt. 12-1 at 21). The Court disagrees. "To be incorporated by reference, the complaint must make 'a clear, definite and substantial reference to the documents.'" *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citation omitted). "A mere passing reference or even references, however, to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself." *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011). The complaint makes a single reference to the witness statement— that it was recanted. (Dkt. 1 at ¶ 66). A singular reference like this is insufficient for the Court to consider this extrinsic document on Defendants' motion to dismiss.

victim statement provided probable cause for Plaintiff's arrest and whether the victim statement was procured before or after Plaintiff was arrested. Accordingly, Defendants' motion to dismiss the Fourth Amendment false arrest claim as asserted against Deputy Lewellyn and the Doe Defendants is denied. To the extent this claim is asserted against other individual defendants, the motion is granted because the complaint does not allege other individual defendants were personally involved in the arrest.

**2. Malicious Prosecution**

Defendants also argue that Plaintiff's malicious prosecution claim must be dismissed because there was probable cause to believe the prosecution would succeed. (Dkt. 12-1 at 19-21). Again, the Court disagrees.

To prevail on a § 1983 claim for malicious prosecution, "a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law[.]" *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations omitted). A malicious prosecution claim requires a showing that "(1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice[,] and[ ] (4) the matter terminated in plaintiff's favor." *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (quoting *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010)). In addition, a plaintiff must show that there was "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).

"The probable cause determination relevant to a malicious prosecution claim differs from that relevant to a false arrest claim, and the two determinations play different roles in the two causes of action." *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000). "[I]n a malicious prosecution action, the relevant probable cause determination is whether there was probable cause to believe the criminal proceeding could succeed and, hence, should be commenced." *Id.* (citation omitted). Limited to the complaint, Plaintiff was arraigned on the same day as his arrest, November 4, 2024 (Dkt. 1 at ¶ 79), and it is not clear when the witness statement was created. Based on Plaintiff's allegations, the Court cannot conclude that there was probable cause at the time criminal proceedings were commenced against Plaintiff.

Defendants raise no other arguments related to the malicious prosecution claim. Plaintiff alleges that he was charged with criminal obstruction of breathing or blood circulation and harassment in the second degree in a prosecution initiated by Deputy Lewellyn and unknown Doe Defendants despite a lack of probable cause. (*Id.* at ¶¶ 29, 38). Plaintiff had to make "multiple appearances in court" and the accusatory instrument was eventually dismissed, thus terminating the prosecution in his favor. (*Id.* at ¶¶ 29, 32). These allegations are sufficient to state a malicious prosecution claim. Therefore, the Court denies Defendants' motion to dismiss the malicious prosecution claim as asserted against Deputy Lewellyn and the unknown Doe Defendants. As with the false arrest claim, to the extent the malicious prosecution claim is asserted against any other individual defendant, it is dismissed against them based on a lack of personal involvement.

**3. Thirteenth Amendment**

"The Thirteenth Amendment provides that '[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.'" *McGarry v. Pallito*, 687 F.3d 505, 510 (2d Cir. 2012) (quoting U.S. Const. amend. XIII, § 1). "[I]t is well-settled that the term 'involuntary servitude' is not limited to chattel slavery-like conditions. The Amendment was intended to prohibit all forms of involuntary labor, not solely to abolish chattel slavery." *Id.* To show involuntary servitude, Plaintiff must allege that he was "forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *Id.* at 511 (quoting *United States v. Kozminski*, 487 U.S. 931, 952 (1988)). Plaintiff makes no such allegations here.

Plaintiff's complaint alleges he was arrested and detained for eight hours in a cold jail cell. (Dkt. 1 at ¶¶ 69-70). There are no allegations that he had to perform forced labor. Plaintiff's allegation that Defendant Lewellyn called him a "[d]ouche," (*id.* at ¶ 76), is also insufficient to state a claim under the Thirteenth Amendment. Accordingly, Defendants' motion as to the Thirteenth Amendment claim is granted. *See Alicea v. City of Bridgeport*, No. 3:21-CV-01147 (KAD), 2022 WL 2527975, at *4 (D. Conn. July 7, 2022) (dismissing Thirteenth Amendment claim where the complaint "fail[ed] to allege that the Plaintiff was subjected to a condition of servitude in which she was forced to work for the Officer Defendants through coercive means, whether legal or physical").

#### 4. *Monell* Liability

Plaintiff also asserts a claim pursuant to *Monell v. Dep't of Soc. Servs. of City of New York* against Wayne County, alleging that the county maintains several policies and practices that led to the violation of Plaintiff's rights. (Dkt. 1 at ¶¶ 48-61). Defendants argue that Plaintiff's *Monell* claim must be dismissed because Plaintiff failed to allege any facts demonstrating his constitutional rights were violated as a result of a Wayne County policy. (Dkt. 12-1 at 28-30). The Court agrees with Defendants.

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). To establish a municipal policy, practice, or custom, a plaintiff must allege "(1) a formal policy endorsed by the municipality; (2) actions taken or decisions made by the municipality's policymakers, which caused the alleged civil rights violation; (3) a practice so widespread that it constitutes 'a custom or usage'; or (4) a failure by the municipality's policymakers to properly train or supervise their subordinates." *Forrest v. County of Greene*, 676 F. Supp. 3d 69, 76 (N.D.N.Y. 2023) (citing *Green v. City of New York*, 465 F.3d 65, 80-82 (2d Cir. 2006)).

"Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones*, 691 F.3d at 80.

> [I]solated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability. . . . [unless] such acts . . . were done pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage

> of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses.

*Id.* at 81. Furthermore, "[a] plaintiff cannot allege a *Monell* claim where he has not alleged a valid underlying constitutional deprivation." *Lacey v. Yates County*, 30 F. Supp. 3d 213, 228 (W.D.N.Y. 2014) (citing *Johnson v. City of New York*, 551 Fed. App'x 14, 15 (2d Cir. 2014)).

**i. Pre-Hospital Care Records**

Plaintiff alleges there is a "consistent pattern that Wayne County has adopted beginning in the early 2000's . . . for falsifying [pre-hospital care reports]." (Dkt. 1 at ¶ 51). According to Plaintiff, the Wayne County Medical Director, Dr. Syrett, failed to supervise Wayne County emergency medical technicians ("EMTs"), which led to this pattern of falsifying pre-hospital care reports and shredding other medical documents. (*Id.* at ¶¶ 51-52). Plaintiff alleges this failure to supervise "and make sure a [pre-hospital care report] was written for every [EMT] call is a violation of [Plaintiff's] 6th, 8th, and 14th Amendment rights. . . ." (*Id.* at ¶ 52). Defendants argue that "[a]n alleged failure to produce records is not a constitutional violation" (Dkt. 12-1 at 29), and the Court agrees.

None of the constitutional amendments or other laws and regulations cited by Plaintiff may serve as the basis of Plaintiff's alleged *Monell* claim for failure to provide a pre-hospital care report. The Sixth Amendment addresses the rights of the accused in criminal prosecutions, and the Eighth Amendment prohibits excessive bail, fines, and cruel and unusual punishment. U.S. Const. amend. VI, VIII. To the extent Plaintiff alleges a due process violation under the Fourteenth Amendment, that claim also fails.

A Fourteenth Amendment procedural due process claim requires a plaintiff to show that he "possessed a protected liberty or property interest, and that he was deprived of that interest without due process." *McMenemy v. City of Rochester*, 241 F.3d 279, 285-86 (2d Cir. 2001) (quoting *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998)). "[P]roperty interests are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Id.* (quoting *Luck v. Mazzone*, 52 F.3d 475, 477 (2d Cir. 1995)). "The Supreme Court has explained that '[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Id.* (quoting *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).

Generously construing the complaint, Plaintiff points to New York Public Health Law, New York regulations, and the Health Insurance Portability and Accountability Act ("HIPAA") as the sources for his property interest in the pre-hospital care report and other medical documents created by EMTs. (Dkt. 1 at ¶¶ 51-55). As indicated by Plaintiff, the New York State Emergency Medical Services Code provides that certified EMTs "shall accurately complete a pre-hospital care report . . . for each patient with whom the [EMT] makes patient contact, and shall provide a copy . . . when and to the extent otherwise authorized by law[.]" 10 N.Y.C.R.R. § 800.15(b). Plaintiff alleges that HIPAA required the EMTs to preserve his pre-hospital care report and other medical documents for six years. (Dkt. 1 at ¶¶ 51, 55). While a HIPAA covered entity must maintain policies and procedures related to the privacy and security of protected health information (45 C.F.R.

§§164.316(b)(2); 164.530(j)), there is no such retention requirement for patient medical records. Furthermore, the federal regulations promulgated pursuant to HIPAA provide that "an individual has a right of access to inspect and obtain a copy of protected health information about the individual in a designated record set, *for as long as the protected health information is maintained in the designated record set*[.]" 45 C.F.R. § 164.524(a)(1) (emphasis added).

Caselaw is also clear that HIPAA is not enforceable through a § 1983 action. *Rodgers v. Rensselaer Cnty. Sheriff's Dep't*, No. 1:14-CV-01162 MAD, 2015 WL 4404788, at *7 (N.D.N.Y. July 17, 2015) ("It is well established that, because there is no private right to action under HIPAA, a violation of the Act cannot serve as the basis of a § 1983 claim."); *see also Sneed v. Pan Am Hosp.*, 370 F. App'x 47, 50 (11th Cir. 2010) ("We decline to hold that HIPAA creates a private cause of action or rights that are enforceable through § 1983." (internal citation omitted)); *Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009) ("Since HIPAA does not create a private right, it cannot be privately enforced either via § 1983 or through an implied right of action."). More to the point here, courts have also concluded that a HIPAA violation may not serve as the basis of a Fourteenth Amendment claim. *See Bisping v. Mayo Clinic Health Sys.*, No. 23-CV-255-WMC, 2023 WL 3620876, at *2 (W.D. Wis. May 24, 2023) (holding that neither state statute nor HIPAA "create a property interest in access to medical records"); *Kashkashian v. Markey*, No. CV 16-3755, 2017 WL 5518024, at *2 (E.D. Pa. Nov. 17, 2017) ("HIPAA . . . does not provide a private cause of action and therefore is not a cognizable Fourteenth Amendment claim."). The Court finds these cases persuasive and

concludes that even if the allegations in the complaint are true, and Defendants needed to maintain Plaintiff's pre-hospital care record to provide a copy to him, the failure to do so is not enforceable through a § 1983 action.

**ii. Other Alleged Policies**

The complaint is also replete with allegations that Wayne County maintained unspecified policies, procedures, or customs that resulted in alleged constitutional violations. (*See, e.g.*, Dkt. 1 at ¶ 49 ("Upon information and belief, it was the custom, policy and practice of [Wayne County] to tolerate, condone, and encourage constitutional violations, such as those alleged by Plaintiff herein, by failing to properly punish, charge, reprimand, and investigate allegations and incidents of misconduct by Deputy Sheriffs, Medical Care Director and paramedics."); *id.* at ¶ 56 ("Upon information and belief, it was the custom, policy and practice of [Wayne County] to authorize and permit certain Deputy Sheriffs and paramedics, including the individual Defendants, to cause the search and seizure of Plaintiff's person despite the lack of a warrant or any other justification that would justify the search and seizure."); *id.* at ¶ 56[8] ("Upon information and belief, it is the custom, policy and practice of [Wayne County] to encourage and cause constitutional violations by Deputy Sheriffs employed by [Wayne County], including the violations of Plaintiff's constitutional rights by the individual Defendants.")).

These allegations lack any detail necessary to plausibly allege the existence of an unconstitutional policy and are therefore insufficient to state a claim for municipal liability

8 The complaint contains two paragraphs numbered "56" in succession on page 17.

pursuant to *Monell*. *See, e.g.*, *Vasquez v. City of New York*, No. 20-CV-4641 (ER), 2023 WL 8551715, at *5 (S.D.N.Y. Dec. 11, 2023) ("[C]ourts dealing with *Monell* claims have 'disregarded' the use of 'conclusory' allegations that do not provide additional support that a plaintiff's experience is consistent with a larger pattern of similar conduct."); *Brock v. City of New York*, No. 21CIV3087PGGGWG, 2022 WL 4544966, at *3 (S.D.N.Y. Sept. 29, 2022) ("Without specific allegations regarding the systemic nature of a challenged practice, a *Monell* claim on a theory of 'widespread practice' must fail."), *report and recommendation adopted*, No. 21CIV3087PGGGWG, 2022 WL 17991618 (S.D.N.Y. Dec. 29, 2022). Plaintiff's repeated boilerplate allegations that Wayne County or other Defendants failed to train, discipline, and supervise individual defendants is also insufficient for *Monell* liability. *See Smith v. Westchester County*, No. 19-CV-1283 (KMK), 2019 WL 5816120, at *6 (S.D.N.Y. Nov. 7, 2019) ("Plaintiff's bare claim that Municipal Defendants failed to train and supervise its staff is a 'boilerplate assertion[ ]' and is therefore insufficient, without more, to state a *Monell* claim."); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 539 (S.D.N.Y. 2012) (dismissing *Monell* claim where the plaintiff "merely alleged that the Town failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program, or regarding other instances of police misconduct which could be attributed to a failure to train.").

Plaintiff's attempt to demonstrate a widespread practice or policy by citing to the cases *Chase v. The County of Wayne, et al.*, 6:22-cv-06265-MAV-CDH (June 9, 2022) and *Burke v. The County of Wayne*, 6:19-cv-06770-CJS-MWP (October 17, 2019) is also insufficient. (Dkt. 1 at ¶ 58). Plaintiff does not explain how the facts of those cases present

"[s]imilar incidents" to this case. Indeed, as Defendants point out, both of those cases were resolved prior to trial and there was no finding of liability in either case. (Dkt. 12-1 at 30 n.4).[9] Moreover, identifying two other similar incidents over a span of five years, without more, does not state a claim for municipal liability. *See Dipinto v. Westchester County*, 2020 WL 6135902, at *10 (S.D.N.Y. Oct. 19, 2020) (allegations that plaintiff and "at least two others" had been harmed were insufficient to establish municipal liability, because "simply naming three people does not—without more—constitute a widespread policy"). Accordingly, the claims asserted against Wayne County pursuant to *Monell* are dismissed.

**5. Remaining Constitutional Claims**

Plaintiff asserts several other constitutional claims, including a Fourth Amendment excessive force claim, Fourteenth Amendment equal protection claim, and a deliberate indifference to medical care claim pursuant to the Eighth and Fourteenth Amendments. (Dkt. 1 at ¶¶ 28, 44-46, 62-71).[10] As explained above, Defendants are entitled to dismissal of these remaining constitutional claims as Plaintiff failed to allege any one defendant was personally involved in these remaining claims. But even if Plaintiff alleged an individual

9 The Court has reviewed the docket of both cases and agrees with Defendants' assessment. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the court could take judicial notice[.]").

10 To the extent Plaintiff alleges a violation of the Eighth Amendment while he was detained as a pre-trial detainee, that claim is analyzed under the Fourteenth Amendment's Due Process Clause. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims are evaluated under the Due Process Clause because, pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." (citation modified)).

Defendant was personally involved in these remaining claims, the claims would not survive dismissal for the reasons explained below.

**i. Excessive Force**

"The Fourth Amendment, which protects against unreasonable seizures, governs a claim that excessive force was used in connection with an arrest." *Mickle v. Morin*, 297 F.3d 114, 120 (2d Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 388, 391-95 (1989)). "Claims that police officers used excessive force during an arrest are analyzed under the Fourth Amendment's reasonableness standard." *Brooks v. Whiteford*, 384 F. Supp. 3d 365, 369 (W.D.N.Y. 2019) (citing *Graham*, 490 U.S. at 395). The "application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable in light of the facts and circumstances confronting them." *May v. Levy*, 659 F. Supp. 3d 323, 337 (E.D.N.Y. 2023) (quoting *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004)).

Plaintiff's excessive force claim fails because he does not set forth any allegations necessary to create a plausible inference that any force, let alone unreasonable force, was used against him. Plaintiff merely asserts in conclusory fashion that a group of eight individual defendants and unknown Doe Defendants "used excessive force and unreasonable force throughout [his] arrest on or about November 4th, 2024." (Dkt. 1 at ¶ 45). Such an allegation is insufficient to state a claim for the use of excessive force in violation of the Fourth Amendment. Plaintiff does not identify what force was used, whether he sustained an injury, or the circumstances of the use of force. Plaintiff alleges that he had three "[h]uman bites" while he was held at the jail (*id.* at ¶¶ 68-69), but he does

not allege when he obtained those bites or who bit him. Plaintiff's excessive force claim must therefore be dismissed.[11]

### ii. Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike." *Young v. Suffolk County*, 705 F. Supp. 2d 183, 204 (E.D.N.Y. 2010) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). To prevail on an equal protection claim, a plaintiff "must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Pereira v. Town of N. Hempstead*, 682 F. Supp. 3d 234, 244 (E.D.N.Y. 2023) (quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005), *abrogated on other grounds by Twombly*, 550 U.S. at 546).

Plaintiff alleges that he is African American (Dkt. 1 at ¶ 75), but he does not explain how he was treated differently as a result of purposeful discrimination nor allege the

---

[11] Plaintiff argues in his opposition to the motion to dismiss, that handcuffs were "applied with extreme tightness" thereby giving rise to an excessive force claim. (Dkt. 17 at ¶ 90). But the use of handcuffs is not alleged anywhere in the complaint. On a motion to dismiss, the Court cannot consider factual arguments not contained in the complaint. *See Urban v. Bassett*, No. 1-22-CV-19-JLS-JJM, 2022 WL 1667377, at *2 (W.D.N.Y. Apr. 18, 2022) ("[S]ince 'briefs are not pleadings', those arguments cannot 'shore up the allegations of the complaint' or 'pull the Complaint into the realm of plausibility[.]'") (internal citations omitted), *report and recommendation adopted*, No. 22-CV-19 (JLS) (JJM), 2022 WL 1666980 (W.D.N.Y. May 25, 2022). Moreover, allegations of unreasonably tight handcuffs, without more, are insufficient to state a claim for excessive force. *See Livigni v. Ortega*, No. 15-CV-9454 (CM), 2016 WL 6143351, at * 4 (S.D.N.Y. Oct. 19, 2016) (dismissing excessive force claim where plaintiff alleged "his handcuffs were unreasonably tight, and that as a result he suffered a loss of circulation").

existence of a similarly situated individual. Accordingly, Plaintiff's equal protection claim must be dismissed.[12]

**iii. Deliberate Indifference to Medical Care**

Claims of deliberate indifference to medical care are governed by the Fourteenth Amendment's Due Process Clause for pre-trial detainees. *See King v. Virts*, 826 F. Supp. 3d 480, 499 (W.D.N.Y. 2026). To state a claim for deliberate indifference to medical care, a plaintiff must show: (1) "his medical condition is objectively a serious one[;]" and (2) "that the defendant acted with deliberate indifference to [the plaintiff's] medical needs." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). To be sufficiently serious, there must exist "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). To show deliberate indifference, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).

---

[12] In his opposition to the motion, Plaintiff identifies Deputy Lewellyn as the defendant who violated his Fourteenth Amendment equal protection rights. (Dkt. 17 at ¶ 14). As already explained, the Court is limited to the well-pleaded allegations in the complaint and cannot consider facts asserted in briefs. But even if the complaint properly alleged that Deputy Lewellyn was personally involved in the alleged equal protection violation, that claim would not survive dismissal for the other reasons explained herein.

Plaintiff's allegations fail to meet both prongs. Nothing in the complaint suggests that the three human bites created a condition that risked Plaintiff's death, degeneration, or extreme pain. Indeed, the complaint alleges that Plaintiff was only held for eight hours at the jail and the bites were quickly resolved with "a shot" and a week's supply of antibiotics. (Dkt. 1 at ¶ 70). The complaint also contains no allegations that any defendant knew Plaintiff's medical condition posed an excessive risk to his health or safety. The complaint merely alleges that "[t]he plaintiff requested immediate [m]edical attention and the defendants disregarded Plaintiff's request which led to the pain, suffering and scarring that [Plaintiff] still indulges [to] this day." (*Id.* at ¶ 68). Such an allegation is insufficient to demonstrate that a particular defendant knew that the bites constituted a serious medical risk to Plaintiff's health and safety and declined to intervene despite being aware of that risk. Plaintiff's claim for deliberate indifference to medical care must therefore be dismissed.[13]

**iv. § 1983 Conspiracy Claim**[14]

Defendants also argue that the allegations in the complaint are insufficient to state a § 1983 conspiracy claim. (Dkt. 12-1 at 35). The Court agrees.

---

[13] Like the equal protection claim, Plaintiff's opposition to the motion to dismiss includes more specific factual allegations regarding the personal involvement of Nurse Holly, EMT Catalano, and EMT Hannigan in plaintiff's deliberate indifference to medical care claim. (Dkt. 17 at ¶¶ 49, 54-57). But again, the Court may not consider factual arguments raised in Plaintiff's brief that were not included in the complaint.

[14] Although Plaintiff cites the criminal statutes 18 U.S.C. §§ 241 and 242 (Dkt. 1 at ¶¶ 94-95), the Court construes his complaint to assert a § 1983 civil conspiracy claim.

To survive dismissal, Plaintiff's § 1983 conspiracy claim must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002).

Even generously construed, the complaint does not allege an agreement between any of the Wayne County defendants and the two private parties, Nurse Holly and Ed Major, to inflict an unconstitutional injury. As Defendants argue, any conspiracy claim against members of the same entity is barred by the intracorporate conspiracy doctrine. *See Varricchio v. County of Nassau*, 702 F. Supp. 2d 40, 62 (E.D.N.Y. 2010) ("The intracorporate conspiracy doctrine posits that the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other."). Plaintiff's § 1983 conspiracy claim is therefore dismissed.

**D. State Law Claims**

Plaintiff also asserts a state-law claim for assault and battery against Wayne County and several individual defendants, and a state-law claim for negligent hiring, supervision, and retention against Wayne County. (Dkt. 1 at ¶¶ 86-93).[15] Because Plaintiff failed to

---

[15] Although the title of Plaintiff's assault and battery claim does not name Wayne County as a defendant, he alleges that "[t]he actions of Deputy Sheriffs and employees, which were performed within their scope of employment, creates liability against Defendant [Wayne County] under [state law]." (Dkt. 1 at ¶ 89). Unlike § 1983 claims, a municipality may be vicariously liable for the common-law torts of its employees. *See L.B. v. Town of Chester*, 232 F. Supp. 2d 227, 239 (S.D.N.Y. 2002) ("Unlike cases brought under § 1983, municipalities may be liable for the common law torts, like false arrest and

timely file a notice of claim, his state-law claims against Wayne County and the individual defendants sued in their official capacities are dismissed without prejudice. But Plaintiff's assault and battery claim against Deputy Lewellyn and the unknown Doe Defendants sued in their individual capacities may proceed.

**1. Individual and Official Capacity Claims**

The Court construes the complaint to assert claims against the individual Wayne County employees and officials in both their official and individual capacities. "[*P*]*ro se* complaints should be construed as much as possible as asserting claims in both individual and official capacities." *Booker v. Malkemus*, No. 97 CIV. 2418 (DAB), 1999 WL 983878, at *7 (S.D.N.Y. Oct. 29, 1999); *see also Jones-Soderman v. Exec. Sec'y of the State Bd. for Psychology of the State Educ. Dep't of the Univ. of the State of N.Y.*, No. 08 CV 4716 SJF LB, 2010 WL 3800908, at *8 n.7 (E.D.N.Y. May 21, 2010) ("[A]s plaintiff is proceeding *pro se*, the Court should liberally construe her complaint against defendants to allege both individual and official capacity claims."), *report and recommendation adopted*, No. 08 CV 4716 SJF LB, 2010 WL 3780989 (E.D.N.Y. Sept. 20, 2010).

While the complaint does not directly identify if the individual defendants are sued in their individual or official capacities, Plaintiff includes allegations that indicate an intent to sue the individual defendants in both capacities. For example, Plaintiff identifies many of the individual defendants as "individual[s] and employee[s] of [Wayne County]." (Dkt.

---

malicious prosecution, committed by their employees under the doctrine of *respondeat superior*.").

1 at ¶¶ 6, 7, 12-14). He also alleges that the individual defendants "acted outside the scope of their jurisdiction and without authorization of law," (*id.* at ¶ 39), and conversely that many individual defendants were "at all times herein mentioned . . . acting in their official capacity," (*id.* at ¶¶ 24, 26). Construing the allegations in Plaintiff's favor, it appears he intended to sue these defendants in their individual and official capacities.

**2. Notice of Claim**

Claims arising under New York state law brought in federal court "are subject to state procedural rules." *Coggins v. County of Nassau*, 988 F. Supp. 2d 231, 250 (E.D.N.Y. 2013). This requires Plaintiff to follow the notice of claim requirements set forth at N.Y. Gen. Mun. Law § 50-e. *See Matthews v. City of New York*, 889 F. Supp. 2d 418, 448 (E.D.N.Y. 2012) ("New York state courts strictly construe Notice of Claim requirements, which federal courts must apply in exercising supplemental jurisdiction over state law claims[.]" (citations omitted)).

New York County Law § 52 extends the notice of claim requirements in N.Y. General Municipal Law § 50-e to claims against New York counties. The General Municipal Law requires a plaintiff to serve a notice of any tort claim against a municipal corporation 90 days after the claim arises. N.Y. Gen. Mun. Law § 50-e(1)(a). The notice of claim is a "condition precedent" to the commencement of an action against the municipality. *Id.* § 50-e(1). Failure to serve a notice of claim "requires a dismissal for failure to state a cause of action." *Coggins*, 988 F. Supp. 2d at 251 (quoting *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999)). "The burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirement." *Horvath*

*v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006). "Plaintiff must not only plead in his complaint that he has served a notice of claim, but must also allege that the notice was served at least 30 days prior to commencement of the action and that in that time defendants neglected to or refused to adjust or to satisfy the claim." *Davidson v. Bronx Mun. Hosp.*, 64 N.Y.2d 59, 61-62 (1984).

In addition to municipal entities, "[i]t is well settled that the failure to file a notice of claim bars state claims against individual defendants sued in their official capacities." *Brooks v. County of Nassau*, 54 F. Supp. 3d 254, 258 (E.D.N.Y. 2014). But service of a notice of claim is not a condition precedent "for state claims against an individual defendant in his individual capacity . . . unless the county is required to indemnify the individual defendants." *Id.* (quoting *Olsen v. County of Nassau*, No. CV 05–3623(ETB), 2008 WL 4838705, at *4 (E.D.N.Y. Nov. 4, 2008)); *see* N.Y. Gen. Mun. Law §50-e(1)(b).

Defendants argue that Plaintiff failed to comply with the notice of claim requirement. (Dkt. 12-1 at 14-15). Indeed, Plaintiff does not allege that he filed a notice of claim. In his opposition to the motion, Plaintiff only notes that he "attempted to cure any procedural defect by filing a Notice of Claim." (Dkt. 17 at ¶ 34). In reply, Defendants acknowledge that Plaintiff mailed a notice of claim to Wayne County after the motion to dismiss was filed (dated January 20, 2026), but argue that the notice of claim was untimely and otherwise procedurally deficient. (Dkt. 20 at 6; *see* Dkt. 20-2).

Plaintiff's service of the notice of claim is untimely. He alleges that he was arrested and detained for eight hours on November 4, 2024. Plaintiff had 90 days, or until February 3, 2025, to file the notice of claim with Wayne County. His notice of claim was not served

until nearly a year later. "[A]n untimely Notice of Claim served without leave of the court is deemed a nullity." *Walker v. Vill. of Freeport*, No. 15CV4646JFBSIL, 2016 WL 4133137, at *12 (E.D.N.Y. June 13, 2016), *report and recommendation adopted*, No. 15CV4646JFBSIL, 2016 WL 4132252 (E.D.N.Y. Aug. 2, 2016). Accordingly, the state-law claims asserted against Wayne County and the individual defendants to the extent they are sued in their official capacities are dismissed without prejudice. As the Court finds Plaintiff's notice of claim untimely, it need not address the other procedural deficiencies identified by Defendants. To the extent Plaintiff asserts a state-law assault and battery claim against individual defendants acting in their individual capacities, the Court will address that claim in further detail below.

A plaintiff who missed the statutory deadline may request an extension of time to file a late notice of claim, but the General Municipal Law is clear that "[a]ll applications under this section shall be made to the supreme court or to the county court[.]" N.Y. Gen. Mun. §§ 50-e(5); (7). This Court is thus without jurisdiction to grant Plaintiff leave to file a late notice of claim—he must make that application to the applicable New York State court. *See Horvath*, 423 F. Supp. 2d at 424-25 ("Although [the district court] retain[s] jurisdiction over plaintiff's § 1983 action, [the district court] lack[s] authority to permit plaintiff to file a late Notice of Claim and therefore dismiss[es] plaintiff's state law claims without prejudice.").

Plaintiff may file a request from the appropriate state court to serve a late notice of claim within 30 days of the date of this Decision and Order. If Plaintiff files such a request in state court, the Court will hold this action in abeyance pending the resolution of that

state court action. If granted leave from the appropriate state court to file a late notice of claim, Plaintiff may amend his complaint to replead his state-law claims against Wayne County and the individual defendants in their official capacities. If Plaintiff does not seek leave to file a late notice of claim, this action will proceed on the surviving causes of action.

**3. Assault and Battery**

As discussed above, a notice of claim is not a required condition precedent for claims asserted against defendants in their individual capacities, unless the municipal corporation is required to indemnify the employee. N.Y. Gen. Mun. Law § 50-e(1)(b). Plaintiff alleges that Wayne County has a "policy . . . of . . . indemnification against civil liability for its Deputy Sheriffs," (Dkt. 1 at ¶ 49), and Defendants do not appear to disagree as they include a copy of Wayne County's local law as an exhibit to their motion which provides that Wayne County is required to indemnify and defend county employees sued for acts performed in the scope of their employment (Dkt. 12-5 at 4). In the assault and battery section of the complaint, Plaintiff also alleges that "[t]he actions of Deputy Sheriffs and employees, which were performed within their scope of employment, creates liability against [Wayne County] under New York State Law." (Dkt. 1 at ¶ 89). Generally, such allegations would indicate that the individual defendants are sued in their official capacities. But for the reasons explained above, the Court construes the complaint to assert claims against the individual defendants in their individual capacities as well. Moreover, the Second Circuit has recognized "[t]he obligation to indemnify in turn depends upon the resolution of the fact-sensitive question of whether [the employees] were acting within the scope of their employment in . . . committing the alleged tortious acts." *Conte v. County*

*of Nassau*, 596 F. App'x 1, at *5 (2d Cir. 2014) (quoting *Int'l Shared Servs., Inc. v. County of Nassau*, 222 A.D.2d 407, 408 (2d Dep't 1995)). The complaint does not include enough factual information to make that determination at this stage.

"[E]xcept for § 1983's requirement that the tort be committed under color of state law, the essential elements of [excessive force and state-law assault and battery claims are] substantially identical." *Humphrey v. Landers*, 344 Fed. App'x. 686, 688 (2d Cir. 2009) (quoting *Posr v. Doherty*, 944 F.2d 91, 94-95 (2d Cir. 1991)). But a state-law claim for assault and battery is "more plaintiff friendly, because under New York law '[i]f an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest.'" *Graham v. City of New York*, 928 F. Supp. 2d 610, 624-25 (E.D.N.Y. 2013) (quoting *5 Borough Pawn, LLC. v. Marti*, 753 F. Supp. 2d 186, 201 (S.D.N.Y. 2010)).

As discussed above, Plaintiff's false arrest claim may proceed because it is unclear whether his arrest was supported by probable cause. But the complaint only alleges that Deputy Lewellyn and the Doe Defendants were involved in Plaintiff's arrest. (Dkt. 1 at ¶ 29). There are no allegations that any other individual defendant applied any force against Plaintiff or otherwise assaulted him. Because it is unclear at this stage whether Plaintiff's arrest was unlawful or whether Deputy Lewellyn and the unknown Doe Defendants were acting within the scope of their employment, the Court will permit the assault and battery claim to proceed against Deputy Lewellyn and the unknown Doe Defendants in their individual capacities.

**E. Qualified Immunity**

Defendants also argue that the individual defendants are entitled to qualified immunity. (Dkt. 12-1 at 35-36). But the Court concludes that granting qualified immunity at this stage of the proceeding is not appropriate and denies Defendants' request without prejudice.

As the Court concludes Plaintiff may only proceed against Defendant Lewellyn and the unknown Doe Defendants on the false arrest and malicious prosecution claims, and state-law assault and battery claim, the Court will only address Defendants' qualified immunity argument as to those claims. "A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) (citation omitted). Although claims of qualified immunity "should be decided as early as possible in a case," it "is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed." *Walker v. Schult*, 717 F.3d 119, 130 (2d Cir. 2013). "[A] defendant asserting a qualified immunity defense on a motion to dismiss 'faces a formidable hurdle . . . and is usually not successful.'" *Barnett v. Mt. Vernon Police Dep't*, 523 F. App'x 811, 813 (2d Cir. 2013) (quoting *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191-92 (2d Cir. 2006)). "The defense will succeed only where entitlement to qualified immunity can be established 'based [solely] on facts appearing on the face of the complaint.'" *Id.* (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

Granting qualified immunity to Deputy Lewellyn and the unknown Doe Defendants on the false arrest and malicious prosecution claims is inappropriate at this stage of the proceeding. "The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right[.]" *Doe v. Pisani*, No. 21-2847, 2023 WL 4240987, at *3 (2d Cir. June 29, 2023) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)). "In the context of false arrest and malicious prosecution claims, an officer is entitled to qualified immunity if he had either probable cause or 'arguable probable cause.'" *Dufort v. City of New York*, 874 F.3d 338, 354 (2d Cir. 2017) (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)). "Arguable probable cause exists 'if officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* (quoting *Gonzalez v. City of Schenectady*, 728 F.3d 149, 157 (2d Cir. 2013)).

Defendant relies on *Dufort v. City of New York*, to argue that the individual defendants are entitled to qualified immunity on the false arrest and malicious prosecution claims (Dkt. 12-1 at 36), but the qualified immunity issue in that case was decided (and denied) on a summary judgment motion, not a motion to dismiss, *Dufort*, 874 F.3d at 354 ("We conclude that it would be inappropriate to grant qualified immunity to these Defendants at the summary judgment stage."). Based on the sparse allegations in the complaint, the Court concludes that Defendants have not overcome the "formidable hurdle" to be entitled to qualified immunity on this motion to dismiss. Although Defendants rely on the witness statement to contend that Deputy Lewellyn had arguable probable cause to arrest Plaintiff and that probable cause existed to believe the prosecution

would succeed (Dkt. 12-1 at 36), as noted previously, the Court cannot consider that extrinsic document because it is not a part of the complaint. *See Scott v. City of New York*, 812 F. Supp. 3d 270, 278-79 (E.D.N.Y. 2025) (denying qualified immunity where "the Court cannot consider the [domestic incident report] detailing the complainant's allegations to find that probable cause or arguable probable cause existed to arrest Plaintiff because these facts do not appear on the face of the Complaint, nor can they fairly be said to be incorporated by reference into to [sic] the Complaint."). Without the witness statement, it is unclear whether arguable probable cause existed for either the false arrest or malicious prosecution claim, and the circumstances surrounding the procurement of the witness statement are similarly unclear. Additional factual development is necessary.

The Court also concludes it is similarly improper to grant Defendants state-law immunity on the assault and battery claim. "The standard for determining whether police officers enjoy immunity for . . . assault and battery actions is the same under state law as it is under federal law." *Graham*, 928 F. Supp. 2d at 625 (collecting cases); *see Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 401 (S.D.N.Y. 2009) ("The only difference between the federal and state [immunity] doctrines is that the reasonableness of an officer's action is judged with references to state law and the state, not the federal, constitution."). "[A]n officer who has used excessive force is entitled to qualified immunity if his conduct falls in the sometimes hazy border between excessive and acceptable force." *Graham*, 928 F. Supp. 2d at 623 (quoting *Hartman v. County of Nassau*, 350 Fed. App'x. 477, 479 (2d Cir. 2009)). As with the false arrest and malicious prosecution claims, further factual development is necessary to determine the reasonableness of Deputy Lewellyn and the Doe

Defendants' conduct. *See Graham*, 928 F. Supp. 2d at 626 ("[S]ince Defendants failed to meet the standard for immunity under federal law, they also fail to meet [the] standard for immunity under New York State law."). Defendants' qualified immunity and state-law immunity defense is therefore denied without prejudice to reargue at a later stage of the proceeding.

### F. Punitive Damages

Defendants also argue that Plaintiff's request for punitive damages should be dismissed for failure to allege any malicious or reckless conduct and because such damages are barred against a municipality. (Dkt. 12-1 at 37). The Court agrees that punitive damages may not be recovered from a municipality or its employees acting in their official capacity but declines to dismiss Plaintiff's claim for punitive damages at this stage because the Court construes Plaintiff's complaint to assert claims against the individual defendants in their individual and official capacities.

"Punitive damages are available in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Wilson v. Aquino*, 233 F. App'x 73, 77 (2d Cir. 2007) (quoting *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996)). As Defendants contend, municipalities as well as their employees acting in their official capacity are immune from punitive damages in a § 1983 action. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("In sum, we find that considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials."). "Although punitive damages are not available against

municipalities or against individuals sued in their official capacities, punitive damages may be awarded against defendants sued in their individual capacities." *Gustafson v. Vill. of Fairport*, 106 F. Supp. 3d 340, 355 (W.D.N.Y. 2015). Generally, "the issue of whether to award punitive damages is an issue for the jury to decide based on an evaluation of the plaintiffs['] proof of sufficiently serious misconduct." *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 613 (S.D.N.Y. 2013).

As explained in greater detail above, the Court construes Plaintiff's complaint to assert claims against the individual defendants in their individual and official capacities. Therefore the Court declines to dismiss Plaintiff's claim for punitive damages at this stage.

**III. Motion for Service and Leave to Replead**

Finally, the Court denies Plaintiff's motion to have the U.S. Marshals Service serve Administrator House, EMT Hannigan, Connors, Nurse Holly, and Ed Major ("Unserved Defendants"). Federal Rule of Civil Procedure 4(c)(3) provides that "[a]t the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court." A court must order such a request "if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. §1915." Fed. R. Civ. P. 4(c)(3). Although Plaintiff is proceeding *pro se*, he is not proceeding in forma pauperis, and therefore whether to order service by the U.S. Marshals is within the Court's discretion.

For the reasons discussed above, the complaint fails to state a claim against any of the Unserved Defendants because there are no allegations that plausibly allege these

defendants were personally involved in the violative conduct at issue.[16] As such, Plaintiff's request for service by the U.S. Marshals Service is denied but without prejudice as the Court grants Plaintiff leave to file an amended complaint. "Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (citation modified). "If a liberal reading of the complaint 'gives any indication that a valid claim might be stated,' the court must grant leave to amend the complaint." *Thomas v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 314, 329 (E.D.N.Y. 2013) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). As Plaintiff's memorandum in opposition indicates, additional factual allegations may cure the defects in at least some of the claims asserted against the individual defendants.

But "[i]f the problems with a claim are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to replead would be 'futile' and 'should be denied.'" *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2015) (quoting *Cuoco*, 222 F.3d at 112). For the reasons explained above, the defects in Plaintiff's claims against Wayne County Jail, Wayne County Medical Services,

---

[16] Even though Defendants' counsel did not move on behalf of Nurse Holly or Ed Major, the Court still dismisses them as defendants due to Plaintiff's failure to state a claim against them. *See Vasquez v. City of New York*, No. 14 CIV. 491 RMB, 2015 WL 774688, at *2 (S.D.N.Y. Feb. 17, 2015) ("It is well-settled that a district court may *sua sponte* dismiss claims against non-moving defendants for failure to state a claim 'so long as the plaintiff is given notice of the grounds for dismissal and an opportunity to be heard.'" (quoting *Wisoff v. City of Schenectady*, 568 F. App'x. 28, 30 n.2 (2d Cir. 2014))). Furthermore, because Administrator House, EMT Hannigan, and Connors are dismissed, the Court need not address Defendants' argument that those defendants should be dismissed due to untimely service pursuant to Fed. R. Civ. P. 12(b)(5).

and Wayne County Sheriff's Office are substantive as those are mere administrative offices of Wayne County and any claims asserted against those offices in an amended complaint would be futile. In addition, any renewed state-law claims against Wayne County and the individual defendants in their official capacity are also futile unless Plaintiff obtains leave to serve a late notice of claim from the appropriate state court. Therefore, the Court grants Plaintiff leave to replead his federal claims against the individual defendants and any individual capacity state-law claims. Should Plaintiff obtain leave to serve a late notice of claim, Plaintiff may also replead his state-law claims against Wayne County and individual defendants in their official capacities.

Plaintiff may file an amended complaint within forty-five (45) of the date of this Decision and Order in an attempt to cure the deficiencies identified herein. Plaintiff is cautioned that any amendment must comply with this Decision and Order, and if he attempts to plead dismissed claims he must plausibly allege facts in accordance with the principles set forth herein, along with the personal involvement of any identified defendant. Plaintiff is further advised that an amended complaint is intended to completely replace the prior complaint in the action. "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)). Therefore, Plaintiff's amended complaint must include all of the allegations against Defendants so that the amended complaint may stand alone as the sole complaint in this action which Defendants must answer. Plaintiff may renew his motion for service by the U.S. Marshals Service upon filing an amended complaint. If Plaintiff does not file

an amended complaint, this action will proceed on the false arrest and malicious prosecution claims brought pursuant to § 1983 and state-law assault and battery claim against Deputy Lewellyn and the unknown Doe Defendants in their individual capacities. All other claims against all other defendants will remain dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 12) is granted in part and denied in part. Plaintiff's false arrest and malicious prosecution claims brought pursuant to § 1983 and state-law assault and battery claim against Deputy Lewellyn and the unknown Doe Defendants may proceed. All other claims against all other defendants are dismissed as set forth herein. Plaintiff may seek permission from the appropriate state court to file a late notice of claim **within thirty (30) days** of the date of this Decision and Order. In the event Plaintiff files such a motion in state court, he shall immediately notify this Court and this matter will be held in abeyance pending resolution of that motion.

Plaintiff may file an amended complaint also **within forty-five (45)** of the date of this Decision and Order in an attempt to cure the pleading deficiencies identified herein. Plaintiff is advised that an amended complaint will completely replace the prior complaint in the action. Plaintiff's motion for service (Dkt. 11) is denied without prejudice. Plaintiff may renew his motion for service upon filing an amended complaint.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 14, 2026
Rochester, New York